DALE ENGINEERING COMPANY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

Claim No. 17550

Court of Claims, February 10, 1925.

State — claims against State — action for breach of State highway reconstruction contract — claimant alleged loss in profits by reason of alteration of highway contract by State — claim also made for balance due for " overhaul " of material — agreement, executed between claimant and State, deemed waiver of claimant's right to recover — claim dismissed.

A claim for damages arising out of a contract for the reconstruction of a State highway should be dismissed on its merits, where it appears that the claimant, though predicating its damages on a loss in profits by reason of the alteration of the contract by the State, and for the balance due for " overhaul " of material incident to the work, executed an agreement with the State stipulating the amount of labor and material furnished by the claimant and the total amount of money due from the State, since the execution of the agreement constituted a waiver of claimant's rights and barred any further recovery of damages.

CLAIM for damages growing out of the performance of a contract for the reconstruction of a State highway.

*McClung & Rose [Arthur E. Rose* of counsel], for the claimant.

*Carl Sherman, Attorney-General [Lyman A. Kilburn, Deputy Attorney-General,* of counsel], for the State of New York.

ACKERSON, P. J.:

The claimant herein is a domestic corporation. On the 9th day of September, 1921, it entered into a contract with the People of this State through the Commission of Highways to reconstruct three different portions of one continuous highway known in the State Highway Department as Oneida-Verona State Highway No. 5558, Verona-Rome State Highway No. 5521, and that portion

of Rome roads designated as Augusta and Westmoreland sections, County Highway No. 564.

This strip of highway, four and fifty-five one-hundredths miles long, is all in the county of Oneida and was embraced in Federal Aid Reconstruction Contract No. 3019.

Claimant commenced the performance of this contract in the spring of 1922 and completed the work thereunder on or about February 5, 1923.

Thereafter and on July 27, 1923, the claimant filed its claim herein demanding an award against the State for damages upon three causes of action growing out of the performance of the aforesaid contract. One cause of action has been eliminated and the claimant now asks for damages only on the two items of its claim that it offered proof to sustain.

From the first of these it appears that the contract for the reconstruction of the road in question provided, agreed and contracted for a foundation course of gravel the full width of the highway from station 202+50 to station 268+15. This section of the highway was 6,565 feet long, 18 feet wide and constituted about one-fourth of the entire length of the road to be improved. The original contract called for the placing upon this section of the highway of 2,188 cubic yards of gravel for which claimant was to receive three dollars per cubic yard.

On July 6, 1922, about ten months after this contract was entered into and some considerable time after the actual performance of the same had been begun by claimant, the State eliminated this six-inch course of gravel. At the same time the State directed the claimant to construct between the above-named stations on each side of the old macadam a trench eight inches deep and about a foot wide and fill it with gravel. The claimant strenuously objected to this change in its contract but proceeded under protest and performed the same as directed. It now contends that there was no justifiable excuse or reason for this change in the contract and that the action of the Division Engineer of the State in ordering the deduction of the gravel foundation course was arbitrary, capricious and unreasonable and the elimination was of such a magnitude as not to come within the meaning of deductions under the terms of the contract. In other words, that it was a virtual breach of the contract.

The claimant has proven by competent evidence that the elimination of the gravel in question reduced its profit on this contract in the sum of $4,962.38. Of this amount $3,341.91 was the profit which claimant would have made on the cost of the gravel and of the labor of placing it on the highway. One thousand

six hundred and twenty dollars and forty-seven cents was the amount of profit claimant would have made in constructing the shoulder of the highway which was made unnecessary when the gravel course was eliminated and the elevation of the surface of the highway thereby reduced six inches.

The State on the other hand claims that these deductions were permissible under the terms of the contract and calls attention to section 4 of the contract agreement which reads in part as follows: " 4. The said work shall be performed in accordance with the true intent and meaning of the plans and specifications therefor, which are hereby referred to and made a part of this contract, without any further expense of any nature whatsoever to the State than the consideration named in this contract.    The State, however, reserves the right to make such additions, deductions or changes as it deems necessary, making an allowance or deduction therefor at the prices named in the proposal for this work, and this contract shall in no way be invalidated thereby; and no claim shall be made by the contractor for any loss of anticipated profits because of any such change or by reason of any variation between the approximate quantities and the quantities of the work as done.    *    *    * "

Claimant's second cause of action upon which it offered testimony and demands damages is for what is known as " overhaul."    The contract provided that the claimant should have two cents for each 100 feet that it hauled a cubic yard of material over 2,000 feet.    It appears that there were two borrow pits so adjacent to the site of this contract and containing such a quality of material as to be available if permitted to be used. One was known as the Beck pit, 6,115 feet west of the westerly end of the contract site.    The other was known as the Barge canal pit and was 3,625 feet east of the easterly end of the contract.    The Beck pit was owned by private parties; the Barge canal pit was under the control and supervision of the State.    Owing to the fact that the State refused to permit the claimant to take material from the Barge canal pit, it was able to secure only 22 yards from that pit and was compelled to haul 867 yards from the Beck pit. This haul would entitle claimant to $1,312.14 for overhaul.    The State, however, for some reason not explained, in computing the amount of overhaul the claimant was entitled to based it on a haul of 711 cubic yards from the Barge canal pit and 178 cubic yards from the Beck pit.    This computation gave claimant only $708.24 for overhaul, or $603.90 less than it was entitled to on the undisputed testimony in the case.

Whatever legal right, if any, the claimant had to recover from the

State the sum of $4,962.38 as damages for the elimination of the gravel course from its contract, and the sum of $603.90, the balance due it for overhaul, it seems to us was waived when it executed the final agreement herein with the State which is Exhibit No. 11 in this case. The claimant was the party of the first part to this agreement which contains the following language:

" 1. The party of the first part, Dale Engineering Company, hereby agrees to furnish all the quantities of labor and material hereinafter described at the prices hereinafter mentioned in accordance with the terms of the original contract, the requirements contained in this agreement and the orders of the State Commission of Highways; and in consideration of not being required to furnish the items deducted by this agreement and which were found to be unnecessary for the proper completion of the work, hereby consents to the deduction of said items.

" 2. The party of the second part, the State of New York, represented by the State Commission of Highways, hereby agrees to pay Dale Engineering Company, the party of the first part, the prices mentioned in this agreement for the quantities of labor and materials actually ordered and performed in the same manner as is provided for the monthly payment in the contract hereinbefore referred to."

Then follows a schedule which contains a statement of the different items of the work under the contract as finally agreed upon and performed and the amount of money paid the contractor under each item. Also a statement of the amount of increase or decrease in the quantity of each item as compared to the original amount mentioned in the contract. Under item 5, overhaul, we find the total amount to be paid to the contractor under this item is $708.24. And under item 42, foundation course of gravel, is a statement that this item has been decreased from 2,300 cubic yards to 400.88 cubic yards, and the total amount to be paid the contractor is $1,202.64. This document bears date December 12, 1922. It was executed for the Dale Engineering Company by H. V. Owens, its secretary and treasurer, and by the People of the State of New York through its State Commission of Highways by Herbert S. Sisson, Commissioner, approved by L. D. Brownell, Division Engineer, and was approved by the official order of the State Commission of Highways on February 5, 1923. It is an agreed statement of facts between the State and the claimant as to all the labor and material furnished by the claimant in the performance of its contract and the total amount of money the claimant is to receive from the State for such labor and material. It is an exhibit in the case introduced by the claimant, with no

claim that its execution was induced by fraud or made by mistake or under misrepresentation of any kind. Upon the facts of this case it is a complete bar to any recovery under the claim herein and the same must, therefore, be dismissed on the merits.

SMITH, J., concurs.